**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ALASKA**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOSHUA DAVID BROWN, | ) | Case No. 20-00240-GS |
| | ) | |
| Debtor(s). | ) | |

**ORDER ON DEBTOR'S EMERGENCY MOTION**
**FOR ORDER TO SHOW CAUSE WHY SANCTIONS**
**FOR VIOLATION OF AUTOMATIC STAY SHOULD NOT BE ISSUED**

On December 22, 2020, the court held a hearing on the Debtor's Emergency Motion for Order to Show Cause Why Sanctions for Violation of Automatic Stay Should Not be Issued (ECF No. 20) (Motion). Appearances were as noted on the record. The court having reviewed the Motion and the papers filed in support thereof as well as in opposition thereto, and having considered the argument of the parties and the testimony of witnesses, delivered its oral ruling on the Motion at the hearing. The oral ruling is incorporated herein by this reference and is supplemented as follows.

The debtor argues that Falcon Leasing violated the automatic stay by repossessing an excavator that was co-owned by the debtor and his father-in-law Brian Wild, who had filed his own separate bankruptcy case prior to Falcon Leasing's repossession of the excavator. Counsel for Falcon Leasing acknowledged during the hearing that his client knew of the bankruptcy cases prior to seeking repossession. Keith Tompkins, acting for Falcon Leasing, sought and procured the repossession of the excavator on October 29, 2020. In addition to taking possession of the excavator, Tompkins had the debtor sign a document entitled Voluntary Surrender, on Falcon Leasing letterhead, that stated: "When the equipment is repossessed and sold, I will be responsible

for any deficiency balance and all collection costs." The debtor signed the document on October 29, 2020.[1] Brian Wild signed a similar document that same day.[2]

Falcon Leasing candidly concedes that its repossession breached the automatic stay in this case. Section 362(a)(3) of the Bankruptcy Code stays any act to gain possession of property of the bankruptcy estate. There is no dispute that the excavator and its attachments were property of the bankruptcy and Falcon Leasing's repossession of that equipment violated § 362(a)(3). Moreover, Falcon Leasing had the debtor sign a document acknowledging that he "will be responsible for any deficiency balance and all collection costs." Such action also violates the stay as it comprises "an act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case …." 11 U.S.C. § 362(a)(6).

With an exception not applicable here, § 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." It is well settled that a violation of the automatic stay is willful when 1) a creditor knew of the debtor's bankruptcy filing, and 2) the creditor's acts in violation of the automatic stay were intentional. *See Yellow Express, LLC v. Dingley (In re Dingley)*, 514 B.R. 591, 596 (B.A.P. 9th Cir. 2014), *citing Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir. 1989). Falcon Leasing admits that it knew of the debtor's bankruptcy filing before its repossessed the excavator. The evidence is clear that Falcon Leasing intentionally repossessed the excavator and had the debtor sign the Voluntary Surrender document declaring his personal liability for any deficiency.

---

[1] *See* ECF No. 21, p. 8.

[2] *See id.* at p. 9.

2

Falcon Leasing willfully violated the automatic stay, and the debtor is entitled to damages under § 362(k)(1).

The debtor argues that he is entitled to actual damages based upon his lost revenue resulting from the repossession. This ignores that fact upon the bankruptcy filing the excavator and attachments became property of the estate. 11 U.S.C. § 541(a). The debtor did not exempt the excavator, or its attachments.[3] Moreover, the excavator and attachments were co-owned with the bankruptcy estate of Brian Wild,[4] and there is no evidence that it consented or authorized the use of its property of the estate. Accordingly, they were not the debtor's property, and the debtor has not established any right to continue to use them. As such, he has not proven any actual damages resulted from the repossession.

The debtor has not argued that he sustained any other actual damages apart from his attorney fees. The court shall set a briefing schedule for determination of the debtor's attorney fees.

Finally, the debtor seeks punitive damages. Falcon Leasing opposes an award of punitive damages based on its prompt acknowledgement of the violation of the automatic stay. It emphasizes that it did not contest the return of the excavator and never sought to enforce the acknowledgement of personal liability contained in the Voluntary Surrender. The court recognizes that Falcon Leasing quickly acknowledged the violation of the automatic stay when contacted by debtor's counsel. The recognition of the stay violation, however, does not negate the fact that it violated the automatic stay by two very significant actions. No evidence was submitted as to how

---

[3] *See* ECF No. 3, pp. 12-15.

[4] *See id.* at p. 34.

3

or why a leasing and finance business sought to repossess property of the estate without obtaining relief from the automatic stay. Falcon Leasing points to the debtor's statement of intent to surrender the excavator.[5] The debtor's intent to surrender did not terminate the stay as of the date of repossession. *See* 11 U.S.C. § 521(a)(6) and hanging paragraph. Moreover, the debtor's statement of intent does not address the bankruptcy estate's interest in the excavator. *Id*. Based on the limited evidence presented, it appears that Falcon Leasing completely ignored the bankruptcy estate and never contacted the chapter 7 trustee.

Compounding the seriousness of that stay violation, Falcon Leasing required the debtor to acknowledge his personal liability for a prepetition debt after filing for bankruptcy. This action wholly subverts the reaffirmation process established in 11 U.S.C. § 524. Again, the only defense for this action is that Falcon Leasing did not act upon those documents.

Considering an award of punitive damages for a stay violation while the prior statutory provision was found at § 362(h), the Ninth Circuit remarked that "[w]e have traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others." *Bloom,* 875 F.2d at 228; *see also Snowden v. Check Into Cash of Wash., Inc. (In re Snowden)*, 769 F. 3d 651, 657-58 (9th Cir. 2014).

In *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003), the Supreme Court identified "three guideposts" courts should consider when considering a punitive damages award: "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered and the punitive damages award, and (3) the difference between the punitive damages awarded and civil penalties authorized or awarded in comparable cases." In this instance, the court focuses upon the first guidepost. As noted above, there are no

---

[5] *See* ECF No. 5.

4

actual damages apart from the attorney fees incurred to address this situation. And the debtor has not addressed the relationship between the punitive damages sought and civil penalties awarded in comparable cases. These guideposts necessarily limit any award of punitive damages.

As stated in its oral ruling, the court has difficulty seeing past the egregious nature of Falcon Leasing's actions in this instance. This case falls far from the reprehensibility of conduct at issue in *Sundquist v. Bank of America, N.A.,* 566 B.R. 563 (Bankr. E.D. Cal. 2017), but they share the same basic disregard for the fundamental canons of bankruptcy. In *Sundquist*, Bank of America ignored the automatic stay to pursue a void foreclosure and take other grievous actions in violation of the automatic stay. Here, Falcon Leasing ignored the automatic stay not only to engage in a self-help repossession of property of the bankruptcy estate, but also attempted to establish personal liability of a chapter 7 bankruptcy debtor outside of the statutory reaffirmation process. Though Falcon Leasing's actions did not harm the debtor, and were quickly acknowledged as violative of the stay, it nonetheless violated the "black-letter law" of § 362 as clearly as Bank of America did in *Sundquist.* These violations strike at the heart of any bankruptcy.

The *Sundquist* court found Bank of America to be a sophisticated creditor that knew the black-letter law and associated case law. *Id*. at 610. Here, the record is thin as to Falcon Leasing's business, the scope of its operations, or any other violations of bankruptcy law. But its letterhead reveals that it is a division of Falcon National Bank, and is based in St. Cloud, Minnesota. From this, the court infers that the creditor is not a "mom and pop" creditor. Rather, it is a bank engaging in financing of heavy equipment on a national basis. This strongly suggests a level of sophistication that should be aware of, and respect, the black-letter law of bankruptcy. Unfortunately, both the repossession and requiring the signature on the Voluntary Surrender clearly demonstrate a fundamental lack of understanding of bankruptcy. This is problematic and

5

concerning for a business engaged in commercial financing of heavy equipment, and the court finds that it establishes the reckless or callous disregard for the rights of the debtor and bankruptcy estate that support an award of punitive damages.

As stated in its oral ruling, the court will award $7,500 in punitive damages under § 362(k) for the stay violations. In doing so, the court is cognizant of the lack of actual damages apart from the attorney fees, and Falcon Leasing's prompt admission of the stay violation once it was caught. For this reason, the court has selected an amount that is intended to cause some notice, but is a slap on the wrist for a national bank. But the point remains that Falcon Leasing took two actions that violated the stay in this bankruptcy and another. While its conduct is not reprehensible in the manner of the actions taken in *Sundquist* where such violations caused significant emotional damages, Falcon Leasing's actions blatantly crossed a bright line in an egregious manner. Such actions warrant imposition of punitive damages in furtherance of deterring any future similar violations.

Therefore,

IT IS HEREBY ORDERED that the debtor's Emergency Motion for Order to Show Cause Why Sanctions for Violation of Automatic Stay Should Not be Issued (ECF No. 20) is GRANTED, and the court finds that Falcon Leasing willfully violated the automatic stay as set forth in 11 U.S.C. §§ 362(a)(3) and (6).

IT IS FURTHER ORDERED that the debtor is awarded damages pursuant to 11 U.S.C. § 362(k)(1) as follows:

1. The debtor has failed to prove any actual damages resulting from the stay violations apart from his attorney fees. Accordingly:

    a. **No later than January 5, 2021**, the debtor's counsel must file a supplement to the Motion supporting the debtor's request for attorney fees, including all supporting time records and any other relevant documentary or declaratory evidence (Supplement);

    b. **No later than January 12, 2021**, Falcon Leasing may file its opposition to the Supplement and serve that Opposition on the debtor's counsel and the chapter 7 trustee;

    c. In the event Falcon Leasing opposes the Supplement, it must submit a calendar request in accordance with the court's established procedures for requesting a hearing; and

    d. If Falcon Leasing does not file its opposition to the Supplement by the January 12, 2021 deadline, the debtor may file a certificate of no objection and lodge an appropriate order with the court.

2. The court finds that Falcon Leasing's repossession of the excavator and attachments and demand that debtor sign the Voluntary Surrender constitutes reckless and callous conduct that warrants an award of punitive damages. The court awards $7,500.00 in punitive damages. Falcon Leasing must pay the debtor $7,500.00 by submitting said sum to the debtor's counsel **no later than February 15, 2021**; and

3. If the punitive damages award is not received by the deadline set forth above, the debtor's counsel may file a declaration attesting to its non-receipt together with a

//

motion seeking additional sanctions, and shall submit a calendar request to set the matter for hearing.

Dated: December 29, 2020

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  Debtor
J. Carney, Esq.
J. Peterson, Esq.
K. Perkins, Esq.
N. Jipping, Trustee
U.S. Trustee
ECF Participants via NEF
Case Manager